## A. S. KENWAY *v.* J. H. HEFFELFINGER.

## No. 1902.

ARGUED MARCH 14, 1930.     DECIDED APRIL 1, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.
(Parsons, J., dissenting.)

This is an action for the recovery of a realtor's commission. The plaintiff, who is a realtor, claims that the defendant authorized him to sell certain lots located in Honolulu and that acting under this authority he procured a purchaser who was ready, willing and able to purchase the lots at the price and upon the terms designated by the defendant but the defendant refused to consummate the sale. The court below, trying the case without a jury, rendered judgment in favor of the plaintiff in the sum of $650. The defendant brings the case here on exceptions.

On December 23, 1926, the defendant, who lived at San Diego, wrote a letter to the plaintiff in which he said among other things: "If you can get me an offer for the lots that would pay purchase price with Int. and taxes, I will be very glad to consider the offer." On January 11, 1927, the plaintiff replied: "In regards to selling the lots as you suggest, I think that it will be quite possible to do so and make you a fair profit besides." On February 19, 1927, the defendant wrote the plaintiff as follows: "Rela-

tive to the lots, will say that at this time I would not care to accept less than about $13,000. net. This, of course, would include the 1927 taxes. If you can procure a price above this that would justify your efforts, I will agree to deliver title for this price, at any time prior to April 1st. 1927."

Thereafter the plaintiff procured a purchaser (one K. C. Tong) who was ready, willing and able to purchase the defendant's property on the terms and conditions expressed in the following written instrument, designated "Honolulu Realty Board   Standard Form Deposit Receipt," and reading:

"Received from K. C. Tong, et al, the sum of one thousand ($1,000), Dollars, Dollars as a deposit on account of the purchase price of the following described property, situate in the City and County of Honolulu, Territory of Hawaii, to-wit: Lots 36-37-38-47-48-& 49, Leahi Terrace, Kapahulu, Waikiki. Total area—35,100 square feet. See file plan 118. for the purchase price of fourteen thousand & forty no/100 Dollars. Terms—cash on delivery of deed.

"And it is hereby agreed: First—That in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages.

"Second—That in the event the title to said property shall not prove merchantable and said seller shall not perfect, or be able to perfect the same within a reasonable time from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder.

"Third—That the evidence of title is to be in the form of Certificate of Title, issued by a recognized and competent searcher of titles and to be furnished and paid for by the seller.

"Fourth—That in the event the improvements on said described premises should be destroyed or materially damaged between the date hereof and consummation or set-

tlement of this purchase, this contract shall at purchaser's election immediately become null and void and said deposit shall be returned to said purchaser on demand.

"Fifth—That the taxes for the current fiscal year ending December 31st, following this date, and the insurance, rents, improvement assessments, and other expenses of said property shall be pro-rated from date of delivery of deed or final contract of sale, and that the property is sold subject to approval of owner.

"By A. S. Kenway<br>"Agent (Realtors).

"We agree to purchase the above described property on the terms and conditions herein stated.

"K. C. Tong<br>"Purchaser.

"I agree to sell the above described property on the terms and conditions herein stated.

"A. S. Kenway<br>"for Judd H. Heffelfinger<br>"Seller."

On March 15, 1927, the same date the foregoing instrument was signed, the plaintiff sent defendant the following radiogram: "Lots sold cash deed to follow." On March 9 the defendant mailed, at San Diego, a letter to the plaintiff, in which he stated: "I am writing this to notify you that all offers to sell Lots Nos. 36, 37, 38, 47, 48, & 49 'Leahi Terrace,' are herewith withdrawn. I think at this time that $15,000.00 net, would be about the lowest price to be considered." This letter was not received by Kenway until the 17th or 18th of March, which was after the deposit receipt, above quoted, had been signed.

It is conceded by the defendant, and for the purposes of this case the concession will be accepted, that the withdrawal by the defendant of the plaintiff's authorization to sell the lots was ineffectual for that purpose until it was received by the plaintiff.

On March 17, the plaintiff wrote the defendant as follows:

"I am pleased to tell you that I have succeeded in selling the lots at the price you quoted, $13,000 net to you, and am enclosing the deed for same. Please have the deed properly executed and also have the notary who takes your acknowledgment certified for by the clerk of the court. This is important.

"You will note by the consideration in the deed, that I have made it a little more than the amount necessary to cover my full 5% commission. The reason of this is, that the sale was consummated through another real estate co. (Ross Realty Co) with whom I will have to divide the Commission, besides this, I will have to·pay the cost of the deed and abstract and three months taxes, the rate of which is much higher this year than last.

"Kindly return the deed as soon as possible to the Bank of Bishop & Co. who will deliver it to me on payment of the full amount, you can notify them to forward you the money."

The defendant refused to execute the deed referred to in this letter and the sale of the property was not consummated. The plaintiff's action is based on the theory that prior to the receipt by him of notice that the defendant had revoked his agency he procured a purchaser who was able, ready and willing to purchase the property upon the terms proposed by the owner and that therefore under the law he is entitled to recover his commission.

It is not disputed that the plaintiff procured K. C. Tong as a purchaser before he received the defendant's letter dated March 9, notifying him that his agency was rescinded. Nor is it disputed that Tong was financially able to purchase the property nor that he was ready and willing to purchase it. Nor is it denied that Tong executed a written contract of purchase which, if it had been accepted by the defendant, would have been a binding obligation. The only question involved, therefore, is whether Tong was willing to purchase the property on the terms proposed by the defendant or on different terms. If the

former, under the generally accepted rule plaintiff is entitled to his commission although the sale was not completed. If the latter, the contrary result must follow. In other words, a real estate broker can only recover a commission from a seller on an uncompleted sale when he has procured a purchaser who is ready, willing and able to make the purchase upon the terms specified by the owner.

2 Mechem on Agency (2 ed.), § 2437, states the rule thus: "It is indispensable that the purchaser produced by the broker, as one with whom the principal should deal, should be one ready, willing and able to purchase upon the terms specified, if any were fixed, for if he be willing to buy only on different terms or at a different price or upon other conditions, the broker will not be entitled to his commission, unless the variance be waived by the principal, or the contract as made is ratified by him." There is no question of waiver or ratification in the present case.

The terms upon which the defendant authorized the plaintiff to make the sale are contained in the defendant's letter of February 19, and the terms upon which the purchaser was willing to buy are contained in the deposit receipt dated March 15.

In this letter of February 19, the defendant stated that he would not care to accept less than about $13,000 net for the property and that this would include the 1927 taxes. The proposed purchaser expressed his willingness to purchase provided the taxes for the year 1927 be pro-rated from the date of the delivery of the deed or final contract of sale. If by his letter the defendant intended to say that he would sell for $13,000 and himself pay the taxes we think there would be no variance, so far as this item is concerned, between the terms of sale prescribed by the defendant, and the terms of purchase specified by Tong. On the other hand, if the defendant meant to say that he would sell for $13,000 provided he was not re-

quired to pay the taxes there would be such a variance. We think the expression "this, of course, would include the 1927 taxes" should be construed in connection with the preceding expression "about $13,000 net." So contrued it is apparent that its meaning is that the defendant was willing to sell upon condition that he receive $13,000 free from any obligation to the purchaser to pay the taxes for the year 1927. The Century Dictionary defines "net" as follows: "Clear of anything extraneous; with all deductions (such as charges, expenses, discounts, commissions, taxes, etc.) made: as, net profits or earnings; net proceeds; net weight." Under this definition it is quite clear that if no mention of the taxes had been made the expression "about $13,000 net" would have required the plaintiff to produce a purchaser who was willing to assume the taxes. The specific mention of the taxes simply emphasized a charge against the property which the defendant was unwilling to bear and which he was unwilling to have deducted from the amount which he wanted to realize from the sale. That this was the plaintiff's understanding of the reference to the taxes is shown by his letter to the defendant dated March 17. In this letter he said, in explanation of the consideration expressed in the deed ($14,040) which he was forwarding: "I will have to pay the cost of the deed and abstract and three months taxes, the rate of which is much higher this year than last."

There is another item of expense imposed upon the defendant by the purchaser's proposal which is not included in the terms of sale specified by the defendant. This item relates to the cost of a certificate of title. The purchaser's proposal provides "that the evidence of title is to be in the form of Certificate of Title issued by a recognized and competent searcher of titles, and to be furnished and paid for by the seller." This is entirely inconsistent with the

defendant's requirement that he was to receive the sum of $13,000 net.

It is true the purchaser was willing to pay the sum of $14,040 for the property. This, however, does not alter the fact that the proposed purchaser offered to purchase on terms different from those specified by the owner. The plaintiff had no right to a commission unless he secured a purchaser who was ready, able and willing to buy on such terms as the defendant, so far as he and the plaintiff were concerned, ought, under his authorization, to have accepted. Under the authority he gave the plaintiff to sell for $13,000 net the defendant was under no duty to accept an offer for $14,040 upon condition that he pay a proportionate part of the taxes and the cost of the certificate of title. It cannot be said that he should have accepted the purchaser's terms upon the assumption that the aggregate of these items, plus the plaintiff's commission, would not be more than the excess over and above the sum of $13,000, thus leaving him the net price he required. Neither can it be said that he should have assumed that the plaintiff would himself pay these items out of the excess. There was no such provision in the purchaser's proposal and no suggestion that he would look to the plaintiff for these items. If the purchaser's proposal had been accepted the obligation to pay these items would have been on the defendant and not on the plaintiff.

Let us suppose that the defendant had been in Honolulu when the proposal of purchase was made by Tong and the plaintiff had taken the proposal and the deed to him and requested that the transaction be closed and the deed executed and the defendant had refused, could it be held that the plaintiff was entitled to a commission? We think not, for the reason that the proposal was predicated on conditions that the defendant had not authorized, and which he was under no duty to the plaintiff to accept,

namely, that he should pay a proportionate part of the taxes and the cost of the certificate of title. In order to justify his refusal it would not have been incumbent on the defendant to make inquiries and to ascertain whether the excess of the price offered by Tong over and above $13,000 was sufficient to pay the plaintiff a commission and to pay the taxes and the cost of a certificate of title, leaving a net balance of $13,000. This is clear. Let us go a step farther and assume that the plaintiff at the time he presented the proposal of purchase and the deed to the defendant told him that the excess over and above $13,000 was sufficient to cover the items of commission, taxes and certificate of title and that he (the plaintiff) would, after deducting his commission, himself pay the taxes and the cost of the certificate of title, we still think the plaintiff would not be entitled to his commission, for the reason that the defendant could not be required to agree to pay the taxes and the cost of the certificate upon the assumption that the information given him by the plaintiff was correct. Nor could he be required to agree to pay the taxes and the cost of the certificate upon the plaintiff's statement that he would himself pay these items.

Of course if the defendant had accepted Tong's terms upon plaintiff's guarantee that he (the defendant) would receive $13,000 net the situation of the parties would be very different. Under such circumstances, in the event that the amount received by the defendant because of his obligation to pay the taxes and the cost of a certificate of title was diminished to a sum less than $13,000 net, the plaintiff would be liable on his guarantee. But nothing of the sort occurred. The defendant refused to complete the sale and the plaintiff's right to recover, so far as this feature of the case is concerned, depends on whether the defendant ought to have completed it on the plaintiff's statement to him that he would himself pay the taxes and

the cost of a certificate of title out of the excess over and above $13,000. We think the defendant was under no such obligation to the plaintiff. Before the plaintiff is entitled to a commission he must have produced a purchaser who was willing to pay the price at which the plaintiff was authorized to sell, namely, $13,000 net, and this willingness must have been unequivocally expressed in the purchaser's proposal. The proposal itself containing, as it does, conditions which, *prima facie,* render it doubtful whether the seller would, if he completed the sale, receive this price, he was under no duty to the agent to accept it even though he could by inquiry have ascertained that after the conditions imposed upon him were performed there would remain a net balance sufficient to pay the price he required. Similarly, he was under no duty to accept the plaintiff's assurance that if the sale was completed on the purchaser's terms he would receive the net price of $13,000. As between himself and the plaintiff he was entitled to this assurance from the proposed purchaser. In other words, he was entitled to look solely to the proposal of purchase in order to determine whether the terms of his authorization to sell had been met. If they had not been met the defense to the action of plaintiff for a commission on the ground of a variance between the terms of sale and the terms of purchase was complete unless the defendant waived his right to interpose it.

There was a suggestion by plaintiff's counsel at the hearing that this right was waived because of the following facts: On March 8, 1927, one Winstedt sent a cablegram from Honolulu to the defendant at San Diego asking for the terms upon which the property in question could be purchased. The defendant on the following day replied to this cablegram saying that he would consider an offer of $15,000 net, upon certain terms mentioned in the letter. On the same day he wrote the plaintiff notify-

ing him that all offers to sell the property were withdrawn. On a subsequent day, but before the plaintiff received the notification of withdrawal, the defendant wrote another letter to the plaintiff giving as his reason for the withdrawal the refusal of his wife to sign the deed of conveyance. On March 29, 1927, which was after the plaintiff had received the defendant's notice of withdrawal, the defendant wrote the plaintiff in part as follows: "Even tho you had not received the notice, your late procedure would not make the funds available, or place them in my possession within the time limit. Consequently no opportunity given me for accepting the money prior to April 1st, which time I had use for the money." On April 13 the defendant wrote the plaintiff in part as follows: "No reason that we should deed this property to the Chinamen, when I am offered a better price, and an agreeable transaction all around."

It is manifest that the foregoing facts did not constitute the waiver suggested, for the reason that at the time the defendant wrote these letters he knew nothing of the instrument in which the proposed purchaser set out the terms upon which he was willing to purchase. The defendant therefore had no knowledge that he would, if he completed the sale, be required to pay a part of the taxes and the cost of a certificate of title. In the absence of such knowledge it cannot be held that his right to interpose the defense now under consideration was waived. The waiver of a right presupposes a knowledge of the facts out of which the right arises.

It is also contended by the plaintiff that in view of certain testimony given by the defendant at the trial and in view of a stipulation made by his counsel he is now estopped from claiming that there was any variance between his authorization to the plaintiff and the terms upon which the purchaser proposed to purchase. The

substance of the defendant's testimony relied on to support the contention is that his reason for not executing the deed that was forwarded to him by the plaintiff was that it was received too late for him to receive the net price of $13,000 by April 1, and that if he had received the $13,000 net by April 1, he would have signed the deed and gone through with the transaction. The stipulation relied on was as follows: "We admit that he would have to deliver the deed there, if that is satisfactory to counsel." The estoppel claimed by the plaintiff does not follow. The defendant's testimony and the stipulation of counsel as to what the former would have done if he had received $13,000 net by April 1 (which would have been a compliance by the plaintiff with his authorization), do not estop him from now asserting that no proposal of purchase was ever made which guaranteed him the sum of $13,000 net. Neither the testimony nor the stipulation can operate to relieve the plaintiff of the necessity he was under of producing a purchaser who was ready, willing and able to purchase upon defendant's terms.

For the foregoing reasons the exception to the decision of the court below is sustained. The judgment is therefore set aside and a new trial is granted.

*J. L. Coke* (also on the brief) for plaintiff.

*W. Z. Fairbanks* (*E. C. Peters* and *R. J. O'Brien* with him on the briefs) for defendant.

DISSENTING OPINION OF PARSONS, J.

I respectfully dissent. The only terms imposed upon Kenway by Heffelfinger's letter of February 19, 1927, were that Heffelfinger should receive $13,000 net for his property and that delivery of title for that price should be made at any time prior to April 1, 1927. Kenway secured a purchaser ready, able and willing to pay $14,040 for the property and on March 15, 1927, Kenway received from

said purchaser a deposit of $1000 on account of said purchase price and a written agreement to pay the balance in cash on delivery of the deed. The agreement is upon a printed standard form of the Honolulu realty board and contains the provisions recited in the majority opinion. The sale was reported by Kenway to Heffelfinger the same day by radiogram, which was followed two days later by a letter reciting the fact of said sale at $13,000 net to the seller and enclosing a form of a deed to be executed by the defendant and his wife to the proposed grantees. The deed recited a consideration of $14,040 for the conveyance. The letter explained the added amount by stating that the writer would have to pay the cost of the deed and abstract and three months' taxes and would have to divide the commissions with another realty company. Request was made that the executed deed be returned to the Bank of Bishop & Company to be delivered upon payment of the full amount of the purchase price.

The evidence shows that on March 8, 1927, a cablegram was sent defendant by C. W. Winstedt asking for terms upon which said lands could be purchased. On the following day defendant wrote Winstedt agreeing to consider an offer of $15,000 net for the same upon terms set forth in the letter. The same day defendant wrote Kenway notifying the latter that all offers to sell the lots in question were withdrawn. This letter Kenway received on March 18, three days after the execution of the agreement with K. C. Tong and Kenway's radiogram above referred to reporting the sale to Heffelfinger. On March 16 Heffelfinger wrote Kenway, giving as his reason for withdrawing his offer to sell the property that Heffelfinger's wife absolutely refused to sign the deed. On March 29 Heffelfinger wrote Kenway, saying in part: "Even tho you had not received the notice, your late procedure would not make the funds available, or place them in my posses-

sion within the time limit. Consequently no opportunity given me for accepting the money prior to April 1st, which time I had use for the money." On April 13 Heffelfinger again wrote Kenway a letter from which the following excerpt is quoted: "No reason that we should deed this property to the Chinamen, when I am offered a better price, and an agreeable transaction all around." Heffelfinger's excuse, therefore, for not signing the deed appears from his correspondence above quoted. Nowhere does he give as his reason for nonperformance on his part that he had not been sufficiently assured of $13,000 net for his land and he offered no evidence to show that the $1040 to be received over and above that amount was not amply sufficient to pay for the certificate of title mentioned in the contract in addition to the items for the payment of which Kenway expressly acknowledged himself bound; nor did he claim or attempt to prove that Kenway was not financially able to pay the items for which he acknowledged liability in his aforesaid letter of March 17. That Kenway was under legal obligation to Heffelfinger to pay for the certificate of title as well as the proportion of the 1927 taxes and expenses referred to in his letter is shown by his statement in the same letter to the effect that Heffelfinger was to have $13,000 net, taken in connection with the circumstances above recited. In the agreement of Tong plus the agreement of Kenway, Heffelfinger was legally assured of the performance of every condition for which in his letter of February 19, 1927, to Kenway he agreed to deliver title to said land.

For the reasons above set forth I believe that the judgment of the circuit court should be sustained and defendant's exceptions overruled.